UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NITA STEPHAN,[1]<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 22-cv-06021-SK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION, AND REMANDING**<br><br>Regarding Docket Nos. 22, 26 |

This matter comes before the Court upon consideration of the motion by Plaintiff Nita Stephan for summary judgment and the cross-motion for summary judgment filed by Defendant, the Commissioner of Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully considered the administrative record, the parties' papers, and relevant legal authority, and the record in the case, the Court hereby GRANTS Plaintiff's motion and DENIES the Commissioner's cross-motion for summary judgment for the reasons set forth below.

## BACKGROUND

Plaintiff was born on July 18, 1975. (Administrative Record ("AR") 23.) On August 20, 2019, Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental social security income, alleging she was disabled starting on August 1, 2008. (AR 16.) These claims were initially denied on December 13, 2019, and upon reconsideration denied on April 27, 2020. (*Id.*)

On May 27, 2021, Plaintiff, accompanied by counsel, testified at a telephonic hearing

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

before an Administrative Law Judge ("ALJ"). (*Id*.) Plaintiff moved, through her attorney, to amend the alleged onset day of disability to August 20, 2020, and withdrew her request for a hearing relating to the application for a period of disability and disability insurance benefits. (*Id*. at 16-17.) Plaintiff and vocational expert William Houston Reed, Ph.D., both testified at the hearing. (*Id*. at 16.)

In his written decision, the ALJ began by finding that Plaintiff had not engaged in substantial gainful activity since August 20, 2019, the alleged onset date of disability. (*Id*. at 19.) Next, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder ("PTSD"), uterine fibroids, fibromyalgia, and varicose veins. (*Id*.) The ALJ determined that these medically determinable impairments significantly limited the ability of Plaintiff to perform basic work activities. (*Id*.)

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. (*Id*.) The ALJ noted that fibromyalgia is not a listed impairment but that in each case the specific findings should be compared to any pertinent listing to determine whether a medical equivalence may exist. (*Id*.) The ALJ observed that "the [Plaintiff] is neurologically intact, retains the ability to ambulate and perform fine and gross movements without assistive devices and has no involvement of any other body system. . . . Accordingly, there is no medically equivalent listing [for Plaintiff's fibromyalgia]." (*Id*.)

Regarding Plaintiff's mental impairments, the ALJ concluded that the impairments, considered singly or in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. (*Id*.) The ALJ considered whether "paragraph B" criteria were satisfied and concluded that Plaintiff's mental impairments did not result in one extreme limitation or two marked limitations in a broad area of functioning. (*Id*. at 20-21.) Further, the ALJ considered whether "paragraph C" criteria were satisfied and determined that the evidence failed to establish that Plaintiff's mental disorder is "serious and persistent" such that she has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life. (*Id*. at 21.)

Related to these determinations, the ALJ discussed Plaintiff's understanding, remembering, or applying information. (*Id.* at 20.) The ALJ found that Plaintiff had moderate limitation in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (*Id.*) The ALJ noted that Plaintiff is able to prepare simple meals but that she had stopped driving because of anxiety, which makes it difficult for Plaintiff to leave home other than to attend medical appointments and pick up a few items at the grocery store. (*Id.*) In addition, the ALJ observed that Plaintiff had reported that she sleeps poorly at night and has frequent nightmares related to her PTSD diagnosis. (*Id.*) Plaintiff felt that her ability to concentrate had decreased over time, and she felt slow-moving and groggy on a regular basis. (*Id.*)

The ALJ then determined Plaintiff's residual functional capacity ("RFC") was that she had the capacity to perform light work, as defined in 20 C.F.R. § 416.967(b), except that Plaintiff was limited to the performance of only routine, repetitive tasks with occasional judgment, decision-making, and workplace changes; only occasional interaction with the public, coworkers, and supervisors; and is able to maintain concentration, persistence, and pace for extended periods on simple job tasks but not on complex job tasks. (*Id.*) In making the RFC determination, the ALJ stated that he considered all symptoms and to the extent to which they could reasonably be accepted as consistent with the objective medical evidence, and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and S.S.R. 16-3p. (*Id.*) The ALJ also considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. Sections 404.1520c and 416.920c. (*Id.*)

When assessing medical opinions and prior administrative findings, the ALJ stated that he did not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or administrative findings, including those from medical sources such as Plaintiff's primary care physician, Daniel S. Tseng, M.D. (*Id.*) The ALJ then discussed the opinions of the state agency reviewing psychiatrists that assessed Plaintiff's mental impairments as not severe. The ALJ found those opinions were not persuasive because medical records demonstrated that Plaintiff had some specialized mental health treatment with the need for ongoing psychotropic

3

medication prescribed by Tseng. (*Id.*) The ALJ found that the statement of Plaintiff's friend and roommate was "somewhat persuasive . . . to the extent it is consistent with the objective medical evidence." (*Id.*) The ALJ stated that friends and family are not medically trained and, therefore, their opinions do not constitute independent, objective medical evidence. (*Id.*)

The ALJ then found that Plaintiff was unable to perform any past relevant work. (*Id.*) The ALJ observed that Plaintiff was 44 years old, which is defined as a younger individual, on the alleged disability date and that she had at least a high school education. (*Id.*) Because the Medical-Vocational Rules supported a finding that Plaintiff was "not disabled," the ALJ determined that transferability of job skills was not material to a determination of disability. (*Id.*)

Considering Plaintiff's age, education, work experience, and her RFC, the ALJ considered whether that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*) At the hearing, the vocational expert opined that, given Plaintiff's age, education, work experience, and RFC, she would be able to perform the representative occupations, "such as a marker (DOT 209.587-034; 129,000 jobs nationally), mail clerk (DOT 209.687-026; 13,000 jobs nationally), and router (DOT 222.587-038; 35,000 jobs nationally)." (*Id.*) The ALJ determined that based on the vocational expert's testimony, Plaintiff was capable of making a successful adjustment to other work that exists in significant number in the national economy. (*Id.*)

Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 1, 2008, through the date of his decision, June 10, 2021. (*Id.* at 24-25.) Plaintiff timely filed a Complaint in this Court seeking review of the ALJ's decision, and the parties have cross-moved for summary judgment. (Dkt. Nos. 22, 26.)

## ANALYSIS

**A.     Standard of Review.**

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable

4

mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the ALJ. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The ALJ's decision must be upheld if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720-21.

**B.     Legal Standard for Establishing a Prima Facie Case for Disability.**

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). The burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration or be expected to last for at least twelve months. (*Id.*) Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without consideration of the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the ALJ will assess and make a finding about the claimant's RFC based on all relevant medical and other evidence in the claimant's case record. 20 C.F.R. § 416.920(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* at § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, benefits will be denied. *See id.* at § 404.1520(f). If the claimant cannot perform past relevant work, the ALJ will proceed to step five. *Id*.

5

1 At step five, the ALJ determines whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(g)(1). If the claimant can make the adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.* at §§ 404.1520(g). There are two ways to make this determination: (1) by the testimony of an impartial vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2. *Id.*

## C. Substantial Evidence in the Record Does Not Support the ALJ's Decision.

Plaintiff argues that substantial evidence in the record does not support the ALJ's decision because the ALJ erred in three ways. First, Plaintiff asserts that the ALJ failed to provide specific, clear, and convincing reasons to discount Plaintiff's testimony regarding the severity of her physical and mental symptoms. Second, Plaintiff contends that the ALJ improperly dismissed the opinion of Plaintiff's primary care physician Tseng because he failed to provide a legitimate reason to do so. Third, Plaintiff argues that the ALJ gave minimal weight to the statement of Plaintiff's friend without providing a germane reason. Plaintiff states that these errors were not harmless and seeks either that this Court award her benefits, under the credit-as-true rule, or remand for further proceedings. (Dkt. No. 22, Motion for Summary Judgment ("Mot.") at 14, 20, 23-24.) Defendant responds in kind, arguing that the ALJ did not err and, if there were an error, it was not harmful. (*See* Dkt. No. 26, Cross-Motion for Summary Judgment ("Cross-Mot.")). Defendant seeks an affirmance of the ALJ decision or remand, arguing that the credit-as-true rule does not apply. (Cross-Mot. 23-24.) The Court agrees with Plaintiff that the ALJ did not properly explain his determination that Plaintiff's testimony regarding her mental health symptoms was not entirely supported by the objective medical record. However, as explained below, remand for further proceedings is appropriate in this case.

## D. The ALJ's Assessment of Plaintiff's Testimony Regarding Symptoms.

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the [plaintiff] has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504

F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). If the plaintiff presents such evidence, the ALJ will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms and will evaluate whether the statements are consistent with objective medical evidence and the other evidence. S.S.R. 16-3p, 2017 WL 5180304, at *6. "[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. "In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony" but cannot reject a claimant's testimony solely for "lack of medical evidence." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff and Defendant do not disagree with the ALJ's determination at step one, namely that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's purported symptoms. Regarding step two, Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to discount her both her testimony regarding physical pain symptoms and her testimony regarding mental health symptoms. (Mot. at 14-20.) Defendant responds that the ALJ properly discredited Plaintiff's symptoms when he evaluated it against the objective medical evidence. (Cross-Mot. at 3-18.) The Court agrees with Plaintiff but only regarding the ALJ's analysis of her testimony about her mental health.

**1. Plaintiff's Physical Symptoms.**

Plaintiff's lead argument that the ALJ failed to credit Plaintiff's testimony regarding fibromyalgia is flawed because Plaintiff does not focus on her testimony and whether the ALJ properly discredited it. (Mot. at 14-18.) Rather, Plaintiff focuses on S.S.R. 12-2p and *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017), which provide guidance on how an ALJ will evaluate the medically determinable impairment of fibromyalgia and asses an RFC when considering fibromyalgia.

In *Revels*, the Ninth Circuit observed that there had been a 'sea change' because S.S.R. 12-2p authorized a finding that fibromyalgia is a medically determinable impairment. 874 F.3d at

7

656-57. When determining whether a plaintiff has a medically determinable impairment of fibromyalgia, the Court noted that a "diagnosis of fibromyalgia does not rely on X-rays or MRIs." *Id*. at 657. Further, the Court observed that "S.S.R. 12-2p recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.' *Id.* (quoting S.S.R. 12-2p, 2012 WL 3104869, at *6). In light of this, "an analysis of [a plaintiff's] RFC should consider 'a longitudinal record whenever possible.'" *Id.* The *Revels* Court then stated that "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, *the medical evidence* must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2p." *Id*. at 662 (emphasis added).

S.S.R. 12-2p and *Revels* offer guidance to ALJs on how to assess whether a claimant has a medically determinable impairment of fibromyalgia and how to conduct an RFC analysis, but they do not alter an ALJs process of evaluating a plaintiff's testimony. *Garrison*, 759 F.3d at 1014-15; S.S.R. 16-3p, 2017 WL 5180304, at *6. Thus, the Court will analyze whether the ALJ offered specific, clear and convincing reasons for rejecting Plaintiff's testimony.

In his decision, the ALJ observed that Plaintiff offered testimony that she was not able to work because of physical pain and mental health problems. (AR 21.) Plaintiff stated that she has problems with concentration and staying on task. (*Id*.) Plaintiff testified that she gets anxious if she is far from her home and has occasional panic attacks. (*Id*.) Finally, Plaintiff stated that she sleeps poorly at night and frequently feels tired and groggy during the day. (*Id*.)

The ALJ found that Plaintiff's claims regarding the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id*.) The ALJ then went through medical evidence relating to all of Plaintiff's physical impairments. To start, the ALJ noted that overall, Plaintiff had generally sought conservative treatment, largely through her primary care physician, Tseng. (*Id*.) The ALJ noted that Plaintiff's physical exams had been largely normal, other than a few mentions of tender points. (*Id*.)

Beginning with Plaintiff's physical impairment of varicose veins, the ALJ highlighted that Plaintiff's September 2019 physical exam was "completely normal," and when she reported leg

pain related to varicose veins the following month, Tseng referred her to a vascular surgeon. (*Id*.) In December 2019, Plaintiff saw a vascular surgeon, and he ordered a venous reflux study, which revealed some vascular reflex in both common femoral veins. (*Id*.) However, the vascular surgeon stated that the vascular reflux was not the cause of Plaintiff's pain and advised Plaintiff to continue wearing compression stockings. (*Id*.) Following this evaluation, Plaintiff did not report leg pain or tenderness related to her varicose veins and was not referred for any additional treatment. (*Id*.) The ALJ stated that the RFC limitations to light work addressed any problems that Plaintiff's varicose veins might cause. (*Id*.)

The ALJ next addressed Plaintiff's fibromyalgia:

> Also in January 2020, [Plaintiff's] PCP diagnosed her with fibromyalgia after she had 12 positive tender points on exam. He encouraged [Plaintiff] to get exercise and began prescribing Cymbalta for [Plaintiff's] pain in February 2020 (Exhibit 4F/816-817, 872). Later in the year, Dr. Tseng also prescribed a muscle relaxer for her fibromyalgia symptoms (Exhibit 8F/1061-1062). While [Plaintiff] has reported occasional body pain, her physical exams show only some soft tissue tenderness, but not joint swelling or limitations in range of motion (Exhibit 10F/79-82). [Plaintiff] has not sought specialized treatment for her fibromyalgia, and she has not reported significant problems with pain and dysfunction to her PCP.

(*Id*. at 22.)

The ALJ then discussed that Plaintiff had received some treatment for uterine fibroids, including a monthly Lupron injection to help control the fibroid's growth and bleeding. (*Id*.) A recent ultrasound demonstrated that the fibroids had been shrinking with treatment. (*Id*.) Because Plaintiff had not wished to pursue surgery to remove the fibroids, Plaintiff's gynecologist advised her that she must indefinitely take Lupron as prescribed. (*Id*.)

Next, the ALJ discussed Plaintiff's lower back pain. In November 2019, the ALJ noted that Plaintiff had a "completely normal" physical exam with a consultative physician but with some mildly reduced lumbar flexion and lumbar tenderness. (*Id*.) The ALJ noted that Plaintiff had intact strength sensation, reflexes, gait, and coordination. (*Id*.) The consultive physician limited Plaintiff to light work with occasional bending and stooping. (*Id*.) In addition, the ALJ observed that the state agency reviewing physicians limited the claimant to light work with a few non-exertional limitations. (*Id*.) The ALJ stated that these opinions were "mostly persuasive"

because they were consistent with each other and well supported by medical evidence "that documents largely normal physical exam findings and no active treatment needed for [Plaintiff's] varicose veins, successful medication treatment for [Plaintiff's] fibroids, and stable fibromyalgia that has not required emergency or specialized treatment." (*Id.*)

Following this discussion of the objective medical evidence relating to Plaintiff's physical symptoms, the ALJ found Plaintiff's testimony that her physical pain prevents her from working was not entirely consistent given the objective medical evidence. The Court finds that the ALJ provided specific, clear and convincing reasons for partially rejecting Plaintiff's testimony regarding the severity of physical pain. The ALJ considered the objective medical evidence relating to physical pain, as a whole, and gave a thorough discussion on how it did not entirely support Plaintiff's claim that she could not work because of physical pain.

Plaintiff argues that a lack of certain physical exam findings cannot constitute a clear and convincing reason to reject Plaintiff's claims about her fibromyalgia in light of S.S.R. 12-2p. Plaintiff further asserts that the ALJ should not have looked to other physical exam evidence when considering her fibromyalgia symptoms or that Plaintiff's course of treatment had been conservative. (Mot. at 16.) Plaintiff's argument is imprecise and ultimately unavailing.

S.S.R. 12-2p requires that the ALJ assess whether Plaintiff had a medically determinable impairment of fibromyalgia under the assessments provided therein; here, the ALJ found that Plaintiff had fibromyalgia. Regarding the RFC, S.S.R. 12-2p required the ALJ to consider the longitudinal medical record, and the ALJ was to construe the medical evidence was in light of fibromyalgia's unique symptoms. *Revels*, 874 F.3d at 662. This does not mean that the ALJ was required to ignore relevant objective medical evidence. Indeed, in determining, an RFC, the ALJ is required to consider "*all* of the relevant evidence in the case record." S.S.R. 96-8p, 1996 WL 374184, at *5 (emphasis in original). The ALJ did so. The ALJ analyzed the objective medical evidence and other evidence, including Plaintiff's complaints of physical pain and other symptoms, and included a resolution of any inconsistencies in the evidence as a whole. *Id.* Although the ALJ did assess that Plaintiff's fibromyalgia treatment had been conservative, the ALJ did not rely on that observation alone in calculating Plaintiff's RFC. Accordingly, the ALJ

10

1    did not err.[2]

### 2. Plaintiff's Mental Health Symptoms.

Plaintiff also argues that the ALJ's partial rejection of Plaintiff's testimony was flawed as to her mental health symptoms. (Mot. at 18-20.) Specifically, Plaintiff asserts that the ALJ should not have relied on the inconsistency of Plaintiff's psychiatric appointments or Plaintiff's failure to seek emergency or inpatient treatment. Defendant responds that Plaintiff had not offer a good reason for her failure to follow treatment and that the ALJ merely emphasized that Plaintiff had conservative treatment. (Cross-Mot. at 13-18.) Defendant argues that, even if the record has conflicting medical evidence, this Court should affirm. The Court agrees with Plaintiff.

As mentioned above, Plaintiff testified that she has problems with concentration and staying on task and that she gets anxious if she is far from her home and has occasional panic attacks. (AR 21.) Plaintiff stated that she sleeps poorly at night and frequently feels tired and groggy during the day. (*Id*.) Plaintiff testified that she is unable to work because of her mental health problems. (*Id*.)

In his decision, the ALJ stated:

> [Plaintiff] has attended inconsistent psychiatric appointments, but she has not required any emergency or inpatient treatment for her mental disorders. Dr. Tseng has prescribed Ativan at times as well as Cymbalta. [Plaintiff] attended a mental health intake assessment in February 2020, where she reported problems with depression, anxiety, and poor sleep. She noted that her divorce was very stressful. Other than an anxious affect, her mental status exam was normal (Exhibit 6F/7-13). Two months later, she saw a psychiatrist and was hyperverbal with a depressed and anxious mood. The psychiatrist prescribed Neurontin and continued her Cymbalta. A few weeks later, [Plaintiff] reported panic attacks and nightmares, but her mental status exam had improved. The psychiatrist advised her to stop taking

---

[2] Plaintiff also takes issue with the ALJ's assessment that she had not reported significant problems with pain and dysfunction to Tseng. (Mot. 17-18; AR 22.) In other words, the ALJ was highlighting the content of communication between Plaintiff and Tseng. However, the majority of Plaintiff's citations to the record are reports of Plaintiff's communications to other doctors or to Tseng's Functional Capacity Questionnaire. (Mot. 18.) The two citations of Plaintiff's complaints to Tseng include Plaintiff's complaint of left ear pain for six months, radiating to neck and behind ear (AR 4731), and Plaintiff's complaints of chronic swelling and pain in hands and feet (AR 4776.) The Court does not find that this undermines the ALJ's determination regarding Plaintiff's lack of reporting of significant problems with pain and dysfunction to Tseng. In any event, courts "will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

>Neurontin and prescribed trazadone and Prazosin (Exhibits 6F/129-130; 8F/711-712). [Plaintiff] has not returned for any additional mental health treatment, but Dr. Tseng continues to prescribe Ativan (Exhibit 10F/79-82).

(*Id*. at 22.)

Following this discussion, the ALJ found that Plaintiff's testimony (that her mental health problems prevent her from working) was not entirely consistent with the objective medical evidence. (*Id*. at 21-22.) The ALJ did credit some of Plaintiff's testimony, noting that "the residual functional capacity limits the claimant to simple work with only occasional interaction with others to address her mental health problems." (*Id*. at 22.)

The Court finds that the ALJ did not give specific, clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her problems with mental health. In particular, the ALJ did not consider the possible reasons that Plaintiff did not comply with mental health treatment or seek a greater degree of treatment.

As Plaintiff notes,

>if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [an ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. [An ALJ] will not find an individual's symptoms inconsistent with the evidence in the record on this basis *without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints*.

S.S.R. 16-3p, 2017 WL 5180304, *9 (emphasis added).

In her testimony, Plaintiff gave many possible reasons as to her failure to attend appointments and seek a greater degree of mental health treatment. Plaintiff testified that ". . . my anxiety. My panic disorders are so bad I will make my appointments or my – schedule my day, and if I get up that morning feeling this way, I'm so scared I'm just shaking. I don't even want to drive." (AR 37.) When asked why she had stopped working, Plaintiff responded that, "I couldn't focus. I was missing a lot on the appointments, meetings, couldn't function. Like, I started – couldn't function. My panic, my anxiety took over." (*Id*. at 39.) In describing her mental limitations in grocery shopping, Plaintiff stated, "I'm forgetting a lot again. If they give me a list,

12

or if I have to write a list, it's a piece of paper that I put with me to remember. . . . I've had panic attacks where I've left my groceries in a cart . . ." (*Id.* at 41.)  When asked if her mental health issues affect her appearance at appointments, including medical appointments, Plaintiff stated "Yes.  I'll give you a very good example.  If I have a doctor's appointment in that morning, I start stressing about it 3, 4 hours prior to it. . . .  And I stress so much about it where it gets me so anxious and worried where I call to cancel it or no-show.  I just won't show up." (*Id.* at 42.) Plaintiff then confirmed that she has missed appointments many times.  (*Id*. at 43.)  Plaintiff stated that her problems sleeping affected her ability to remember.  (*Id*. at 44-45.)  Plaintiff described that her anxiety medication had a mild effect on her, and her panic medication sometimes worked, but not all of the time.  (*Id*. at 48.)

The ALJ considered Plaintiff's inconsistent attendance with her psychiatric appointments as a factor in determining that Plaintiff's testimony was inconsistent with the objective medical evidence.  Although an ALJ may consider such information, the ALJ was required to consider possible reasons Plaintiff may not comply with treatment or seek treatment consistent with the degree of his or her complaints. S.S.R. 16-3p, 2017 WL 5180304, at *10 ("[An ALJ] will consider and address reasons for not pursuing treatment that are pertinent to an individual's case.").  It is not clear from the decision that the ALJ did so.  Given that Plaintiff testified as to various reasons for missing medical appointments, the ALJ should have discussed these possible reasons for Plaintiff's inconsistent attendance.  Thus, Defendant's response that Plaintiff did not offer a good reason as to inconsistent attendance is unavailing because Plaintiff offered sufficient possible reasons as to why she failed to make medical appointments.

Moreover, although Plaintiff did not seek emergency or impatient services, the Ninth Circuit has cautioned that "it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).  The ALJ was free to consider the types and level of care Plaintiff sought and received, but the ALJ should have considered the possible reasons why Plaintiff might not have sought such care. S.S.R. 16-3p, 2017 WL 5180304, at *10; *see Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("Ultimately,

13

the 'clear and convincing' standard requires an ALJ to show his work.").

Defendant argues that because the ALJ noted that Plaintiff had some improvement, the ALJ provided a specific, clear and convincing reason to partially reject Plaintiff's testimony. However, the Ninth Circuit has "emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. It was appropriate for the ALJ to discuss the medical evidence that demonstrated Plaintiff's waxing and waning of symptoms, but the ALJ should have stated why he partially rejected Plaintiff's testimony considering the fact that mental health symptoms can improve and decline over time. S.S.R. 16-3p, 2017 WL 5180304, at *10; *Smartt*, 53 F.4th 499.

Because the ALJ did not provide specific, clear and convincing reasons as to why he partially rejected Plaintiff's testimony related to her mental health symptoms, the ALJ erred.

### E. The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician.

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion of treating physician Tseng because the ALJ did not adequately discuss supportability or consistency of the opinion in light of the objective medical evidence.[3] (Mot. at 20-23.) Defendant responds that the ALJ is not required to state his analysis using magic words, and that the ALJ properly analyzed the persuasiveness of Tseng's opinion. (Cross-Mot. at 18-23.) Defendant is correct.

"[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). "The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings. *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)) (internal citations omitted); *see also* 20 C.F.R. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92

---

[3] Plaintiff asserts that there are potentially two standards in evaluating whether an ALJ properly analyzed the persuasiveness of a medical opinion. (Mot. at 20-21.) However, any ambiguity was settled in *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Therefore, the Court will analyze only that part of Plaintiff's argument that remains following *Woods*.

14

1  (quoting 20 C.F.R. § 404.1520c(c)(1)) ("The more relevant the objective medical evidence and
2  supporting explanations presented by a medical source are to support his or her medical opinion(s)
3  . . . , the more persuasive the medical opinions . . . will be."). "Consistency means the extent to
4  which a medical opinion is 'consistent . . . with the evidence from other medical sources and
5  nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. §§ 404.1520c(c)(2)) ("The more
6  consistent a medical opinion(s) . . . is with the evidence from other medical sources and
7  nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").

8       Here, the ALJ acknowledged Tseng's opinion that Plaintiff was limited to lifting/carrying
9  up to ten pounds, standing/walking for two hours in a typical workday, and sitting for six hours in
10 a typical workday with occasional bending and stooping. (AR 23.) The ALJ also noted that
11 Tseng's opinion stated that Plaintiff had marked limitation in handling stress and had symptoms
12 that would occasionally interfere with her completing simple, routine tasks. (*Id*.) Finally, the ALJ
13 observed that Tseng opined that Plaintiff would miss at least four days of work each month with
14 up to 12 unscheduled breaks each workday. (*Id*.)

15      The ALJ found this opinion unpersuasive because it was not supported by the objective
16 medical evidence. Substantial evidence supports the ALJ's supportability and inconsistency
17 finding. The ALJ found that Tseng's opinion was undercut by the objective physical exams
18 (discussed earlier in his opinion), which documented that Plaintiff had some soft tissue tenderness,
19 but no deficit in strength, sensation, or gait. (*Id*.; *see id*. at 21-22.) The ALJ also stated that the
20 opinion appeared to be largely based on Plaintiff's subjective symptom reports and not objective
21 medical evidence. (*Id*. at 23.) The ALJ concluded that Plaintiff did not have significant mental
22 and physical health treatment like the opinion suggested. (*Id*.)

23      Similar to her argument that the ALJ failed to consider Plaintiff's testimony regarding her
24 physical symptoms, Plaintiff urges that the ALJ erred by reviewing and relying upon physical
25 exam findings. Taking Plaintiff's argument to its logical conclusion, an ALJ would never be able
26 to discount a treating physician's opinion regarding physical pain symptoms if a plaintiff has a
27 medically determinable impairment of fibromyalgia. In other words, the supportability and
28 consistency prongs would evaporate. That is not what the regulations require, as recognized by

15

the Ninth Circuit. *Woods*, 32 F.4th at 791-92. The ALJ sufficiently explained how Tseng's opinion lacked supportability and consistency with the objective medical evidence.

Plaintiff's argument that the ALJ should have essentially gone line by line in dismissing Tseng's opinions is also without merit. The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Accordingly, the ALJ did not err.

### F. The ALJ Properly Considered the Opinion of Lay Witness Katheryne Coffman.

Plaintiff argues that the ALJ erred by not giving a germane reason as to discount the testimony of Plaintiff's longtime friend, Katheryn Coffman. (Mot. at 23.) Defendant responds that the regulations that took effect in 2017 do not require an ALJ to articulate a germane reason. (Cross-Mot. at 21-23.)[4] Defendant is correct. Under the regulations that took effect in March 2017, an ALJ is not required to articulate how he or she considered evidence from nonmedical sources using the requirements applicable to medical sources. 20 C.F.R. § 416.920c(d). Therefore, the ALJ did not err when he found that Ms. Coffman's statement was "somewhat persuasive to the extent it is consistent with the objective medical evidence." (AR 23.)

### G. Harmless Error.

A court "may not reverse an ALJ's decision based on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citation omitted). A court is precluded from considering an error to be "harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). A court may find harmless error where the error was inconsequential to the ultimate disability determination. *Id.* at 1055. The "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

Crediting the testimony the ALJ rejected, the Court finds that the ALJ's error was not

---

[4] Plaintiff did not rebut Defendant's argument in her Reply. (Dkt. No. 29.)

harmless. Plaintiff's mental health testimony covered her anxiety and panic disorder and how it impairs her daily living, including preventing her at times from driving a vehicle. Plaintiff also testified as to her lack of focus and forgetfulness, which leads to needing to take breaks and missing appointments. Plaintiff stated that her current anxiety medication has a mild reaction, and her panic medication works from time to time.

To be sure, the ALJ crafted an RFC that included only occasional interaction with others "to address [Plaintiff's] mental health problems." (AR 22.) However, were the ALJ to fully credit Plaintiff's mental health testimony and incorporate it into the RFC, a more restrictive RFC would be certain and would possibly change the ultimate disability determination. Therefore, the ALJ's failure to properly consider Plaintiff's mental health testimony was not harmless error.

## H.     Remand for Further Proceedings is Appropriate.

In reviewing a Social Security Commissioner's decision, a court may remand the case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Moreover, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and remanding for the consideration of new evidence instead of awarding benefits); *see also Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("Because neither the ALJ nor the vocational expert had the full picture before them, remand for further proceedings is particularly appropriate."). Because this evidence may affect other portions of the decision, the ALJ shall determine if any further evaluation is required based on the issues raised here.

"Usually, if additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (internal citation and quotation marks omitted). However, the Ninth Circuit has made clear that courts are

17

"free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits" in appropriate circumstances. *Id.* "[W]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the" testimony or medical opinion evidence "were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true." *Id.* at 1019-20 (quoting *Varney v. Sec'y of Health & Human Servs.,* 859 F.2d 1396, 1401 (9th Cir. 1988)).

The Ninth Circuit has developed the following "three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020.

The Court concludes that further administrative proceedings would be useful in order to let the ALJ adequately address Plaintiff's testimony regarding her mental health issues. Therefore, remand for further proceedings is appropriate in this case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff Nita Stephan's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. The Court REMANDS this case for further administrative proceedings.

**IT IS SO ORDERED**.

Dated: November 3, 2023

_____
SALLIE KIM
United States Magistrate Judge